# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GENTEX CORPORATION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **NO. 4:17-CV-01136** |
| | : | |
| **HELICOPTER HELMET, LLC,** | : | **JUDGE BRANN** |
| | : | |
| **Defendant.** | : | **ELECTRONICALLY FILED** |

---

## AMENDED COMPLAINT

---

Plaintiff Gentex Corporation, by and through its undersigned counsel, states the following as its Amended Complaint against Defendant Helicopter Helmet, LLC in the above-captioned matter:

## PARTIES

1.      Plaintiff Gentex Corporation (referred to hereinafter as "Gentex") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 324 Main Street, Carbondale, Pennsylvania.  For more than 60 years, Gentex has designed, developed and

manufactured life support products for military, law enforcement and other uses, including flight helmets for pilots and crewmen in fixed and rotary wing aircraft.

2.      Defendant Helicopter Helmet, LLC (referred to hereinafter as "HHC") is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business in Melbourne, Florida.  HHC has asserted in a related action that its sole member is a citizen of Florida.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between Gentex and the member of HHC and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.  This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 over the request for declaratory relief stated herein since the claim arises under the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., and the Consent Decree approved and entered as an Order of this Court on June 17, 2015 in the matter captioned Gentex Corporation v. Ronald Abbott, Helicopterhelmet.com and Helicopter Helmet, LLC, docketed at No. 12-CV-2549 (referred to hereinafter as "the Middle District Action").  (A true and correct copy of the Consent Decree is attached hereto as Exhibit "A.")  Additionally, this Court

expressly "retain[ed] continuing jurisdiction to enforce the terms of this Consent

Decree," (see Consent Decree at p. 6), and therefore has ancillary jurisdiction over

this dispute.  There is supplemental jurisdiction under 28 U.S.C. § 1367 over the

related state law claims asserted herein.

4.      The dispute between the parties arises out of and relates to the

Consent Decree entered in this Court and the related Settlement and Release

Agreement dated March 25, 2015 which was negotiated in Pennsylvania.  In the

stipulated Consent Decree, HHC agreed that "[t]his Court has personal jurisdiction

over the parties." (See Consent Decree ¶ 2.)  Further, the parties agreed that any

dispute arising from or related to the Settlement and Release Agreement shall be

brought exclusively in Pennsylvania.  (See Settlement and Release Agreement ¶ 9.)

(A true and correct copy of the Settlement and Release Agreement is attached

hereto as Exhibit "B.")[1]   Accordingly, this Court has personal jurisdiction over

HHC.

5.      Venue is proper in the Middle District of Pennsylvania pursuant

to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the

_____

[1] Although the terms of the Settlement and Release Agreement are confidential, the parties are expressly authorized to disclose any part of the agreement necessary to enforce its terms.  (See Settlement and Release Agreement ¶ 6.)  The copy of the agreement attached as Exhibit "B" is redacted to preserve the confidentiality of terms unrelated to enforcement.

claims asserted herein occurred in this district.  Further, as noted above, this dispute arises out of the Settlement and Release Agreement and the Consent Decree which expressly provide that any dispute arising therefrom shall be brought in Pennsylvania and in this Court, respectively.

## FACTUAL BACKGROUND

6. On December 20, 2012, Gentex commenced the Middle District Action against HHC and its principal, Ronald Abbott ("Abbott"), to enjoin their flagrant infringement of Gentex's registered marks, including the "Gentex," "SPH-4" and "SPH-5" marks, in connection with the sale of competing flight helmets. The request for relief was based on HHC's practice of constructing helmets out of obsolete parts purchased in surplus markets and then marketing the counterfeit, low quality helmets as authentic "Gentex" or "SPH" helmets.  (2d Am. Compl. ¶¶ 14-20.)  (A true and correct copy of the Second Amended Complaint in the Middle District Action is attached hereto as Exhibit "C.")

7. The litigation was filed after years of unfair competition by Abbott and HHC.  When Gentex challenged the unfair competition by Abbott and HHC, Abbott and HHC accused Gentex, both publicly and privately, of

manipulating the marketplace, making misrepresentations to and improperly influencing customers and committing antitrust violations.

8.      Gentex filed the Middle District Action to bring an end to the unfair competition and prevent further abuse, misrepresentation, manipulation and threats by Abbott and HHC.

9.      HHC and Abbott admitted in their answer in the Middle District Action that they used Gentex's registered marks, including the "Gentex" and "SPH" marks, to advertise and sell their competing helmets.  They attempted to defend against Gentex's claims by arguing that HHC's helmets were not inferior to Gentex's products and that Gentex's registered marks were not entitled to trademark protection.  They also alleged as defenses that Gentex had unclean hands and that Gentex suffered no damage because customers purchased HHC's products believing they were of better quality and not because of HHC's misuse of Gentex marks.

10.     A point of dispute between the parties in the Middle District Action related to representations made about counterfeit helmets in "White Papers" issued by Gentex's distributor, Flight Suits, Inc. d/b/a Gibson & Barnes (referred to hereinafter as "Gibson & Barnes").  (True and correct copies of the "White Papers"

produced in discovery in the Middle District Action are attached hereto as Exhibit "D.")

11.     HHC and Abbott relied on the "White Papers" in their defense against Gentex's claims and in support of their counterclaims in the Middle District Action.

12.     During depositions in the Middle District Action, counsel for HHC and Abbott questioned current and former Gentex personnel about the accuracy of representations made in the "White Papers" and the origin of pictures appearing in the "White Papers."  For example, counsel for HHC and Abbott invoked the "White Paper" titled "The Use of Obsolete Earcups in Commercial SPH Helicopter Helmets" during the deposition of Gentex's Aircrew Product Manager, Mark Jones on October 7, 2014.  The questioning on this topic was extensive nad began as follows:

> Q.     Okay.  DX-47 is a document produced by
>        Gibson & Barnes pursuant to the subpoena
>        that was sent to them and it's FS 8 through 19.
>        It's a document called:  "The Use of Obsolete
>        Earcups in Commercial SPH Helicopter
>        Helmets."  Do you see that, sir?
>
> A.     Yes.

(M. Jones Dep. (filed as Doc. No. 112 in the Middle District Action) at 305, ll. 16-22.)  Questioning concerning the "White Paper" continued through the next 30 pages of the transcript.  (True and correct copies of the relevant pages of the transcript of the deposition of Mr. Jones[2] are attached hereto as Exhibit "E."  A true and correct copy of the "White Paper" marked as DX-47 is attached hereto as Exhibit "F.")

13.    HHC and Abbott also relied on the "White Papers" in arguing for an opportunity to take additional discovery concerning the relative safety and performance of Gentex and HHC helmets.  In its brief in support of its motion to compel additional discovery, HHC specifically invoked the "White Papers," which it claimed "bash[ed]" its products and which it characterized as "sales propaganda," and Mr. Jones's deposition testimony concerning the "White Papers" as follows:

> [T]he Second Amended Complaint alleges that Defendants' helmets are unsafe and inferior to Gentex helmets.  **ECF 61** at ¶¶ 17-19.  These allegations have been denied by Defendants, and the requested discovery is relevant to show the lie in Gentex's assertions.

---

[2]  The transcript was redacted to preserve the confidentiality of proprietary information in accordance with the protective order entered in the Middle District Action.

> Further, Gentex distributor G&B has put out
> sales propaganda in the form of "White Papers" that
> bash generic helmets made by competitors (and in
> Gentex and G&B jargon, all competitors that make a
> generic helmet are "counterfeiters"). *See*, *e.g.*, **DX-46** and **DX-47** from the Jones deposition. *See* Jones
> Dep. (**ECF 112-2** at 305:15-324:12, discussing **DX-47**).
>
> Gentex should therefore be ordered to produce its
> responsive documents . . . .

(See Defs.' Mem. of Law in Supp. of Second Omnibus Mot. To Compel Disc.
(Doc. No. 118) at 21.) (A true and correct copy of Defendants' Memorandum of
Law in Support of Second Omnibus Motion To Compel Discovery is attached
hereto as Exhibit "G.")

14.     Another point of contention in the Middle District Action
related to safety alerts and accident prevention bulletins issued by the U.S.
Department of the Interior ("DOI"). HHC relied on the safety alerts and accident
prevention bulletins in defense of Gentex's claims and in support of its
counterclaims. Specifically, HHC challenged the DOI's Accident Prevention
Bulletin dated April 30, 2013 which described the safety risks associated with
counterfeit helmets constructed out of obsolete parts and which clarified the
specific authentic helmet models that are pre-approved for purchase by agencies

within the DOI as set forth in the DOI Aviation Life Support Equipment (ALSE)

Handbook.  Specifically, the Accident Prevention Bulletin states:

> The DOI Aviation Life Support Equipment (ALSE)
> Handbook and the Interagency Helicopter
> Operations Guide (IHOG) used by the USFS contain
> similar requirements in that **flight helmets must
> meet a U.S, military or ANSI standards.  Flight
> helmets currently known to meet these
> requirements include:  SPH-5, HGU-84P, SPH-
> 4B, HGU-56P, Alpha 200, Alpha 400, Alpha
> Eagle (900), MSA Gallet LH050, LH150 and the
> LH250**. . . .

(See Accident Prevention Bulletin at p. 1.)  (A true and correct copy of the DOI

Accident Prevention Bulletin that was the subject of discovery in the Middle

District Action is attached hereto as Exhibit "H.")

      15.     In the Middle District Action, HHC compelled discovery from

Gibson & Barnes concerning, inter alia, the DOI Accident Prevention Bulletin,

including communications with the DOI or any other government agency

concerning the bulletin.  (See Subpoena ¶¶ 11-12 & Ex. B.)  (A true and correct

copy of the subpoena duces tecum served on Gibson & Barnes in the Middle

District Action is attached hereto as Exhibit "I.")  HHC also sought discovery from

Gibson & Barnes concerning the "White Papers" and other Gibson & Barnes

advertising materials, including a publication on the Gibson & Barnes website

titled "Is Your Helmet a Dangerous Counterfeit?" (Id. ¶¶ 5-10.) (A true and correct copy of Gibson & Barnes's advertisement titled "Is Your Helmet a Dangerous Counterfeit" that was produced in discovery in the Middle District Action is attached hereto as Exhibit "J.")

16. Discovery exchanged in the Middle District Action included communications from Abbott and HHC in which they threatened to pursue claims against Gentex and its distributors, either individually or collectively with other sellers, for alleged antitrust violations.

17. After extensive discovery relating to, inter alia, the "White Papers" and DOI publications, Gentex, HHC and Abbott reached a settlement of the Middle District Action at a mediation session in Philadelphia, Pennsylvania in the spring of 2015.

18. The settlement was intended to bring an end to the claims actually asserted in the Middle District Action and related threatened or potential claims, including allegations of unfair competition and/or antitrust violations advanced by Abbott and HHC.

19. Pursuant to the confidential Settlement and Release Agreement which was signed by Abbott on June 1, 2015, HHC agreed to release Gentex from

any and all claims, demands, causes of action, suits, liabilities and damages, known

or unknown, accrued or unaccrued, "in any way related" to the "Dispute" which is

defined on page 1 as the Middle District Action docketed at No. 2012-CV-2549

and the related insurance coverage litigation docketed at No. 2014-CV-996 in the

Middle District which are referred to collectively as "the Lawsuits." The

Settlement and Release Agreement states in pertinent part:

> In consideration of the terms of this Agreement,
> Defendants . . . do hereby release, acquit, and
> forever discharge Plaintiff . . . from <u>any and all</u>
> <u>claims</u>, demands, actions, causes of action, rights of
> action, suits, liabilities, expenses, and damages of
> every kind, nature, and description whatsoever <u>that</u>
> <u>any of the Defendants may now or hereafter have or</u>
> <u>acquire</u>, whether in law or equity, whether known or
> unknown, and whether accrued or to accrue, against
> Plaintiff Released Parties <u>with respect to or in any</u>
> <u>way related to the Dispute or the Lawsuits</u>, other
> than their obligations under this Agreement.

(<u>See</u> Settlement and Release Agreement ¶ 5(b).) (Emphasis added.)

  20. The phrase "related to" as used in the Settlement and Release

Agreement was intended to be and is interpreted expansively. <u>See</u> <u>generally</u>

<u>Travelers Indem. Co. v. Bailey</u>, 557 U.S. 137, 148, 129 S. Ct. 2195, 2201, 174 L.

Ed. 2d 99 (2009) ("the phrase 'in relation to' is expansive" and, when used in court

order affirming bankruptcy reorganization plan, covers not only asserted claims but

also allegations); Freeman v. MML Bay State Life Ins. Co., 445 F. App'x 577 (3d Cir. 2011) (settlement agreement that bars all claims "in any way related to" certain transactions bars all claims predicated on those transactions, including claims that were not actually litigated in prior action that led to settlement), cert. denied, 566 U.S. 905, 132 S. Ct. 1796, 182 L. Ed. 2d 618 (2012); see Front Street Dev. Assocs., L.P. v. Conestoga Bank, 161 A.3d 302, 311-12 (Pa. Super. 2017) (release of claims "related to" loan documents bars all claims "even remotely . . . connected to" those documents, including related claims that had not accrued as of time release was signed), appeal denied, 173 A.3d 253 (Pa. 2017) (per curiam).

21.    The phrase "with respect to" as used in the Settlement and Release Agreement is similarly broad and expansive.

22.    The parties further agreed in the Settlement and Release Agreement that "[t]he state and federal courts of Pennsylvania shall have exclusive venue and jurisdiction over any dispute arising from or related to this Agreement" and that the Honorable Matthew W. Brann "retains jurisdiction for all purposes related to the Consent Decree."  (See Settlement and Release Agreement ¶ 9.)

23.    The settlement was conditioned on the Court's approval of the stipulated Consent Decree which enjoined HHC and Abbott from infringing on

Gentex's marks.  The Consent Decree, which was approved and entered as an

Order of Court on June 17, 2015 (Doc. No. 143), makes specific reference to the

confidential Settlement and Release Agreement and provides that this Court shall

retain jurisdiction to enforce the terms of the Consent Decree.  (See Consent

Decree at pp. 3, 6.)

      24.    In the Consent Decree, HHC admitted that the "Gentex" and

"SPH" marks are the exclusive property of Gentex and that it previously used the

"Gentex" and "SPH" marks to advertise and sell its own products without authority

or approval from Gentex.  (See Consent Decree ¶¶ 3-7.)  Based on these and other

stipulated facts, the Court permanently enjoined HHC from using the "Gentex" and

"SPH" marks in connection with the sale of helmets and from otherwise implying

an affiliation or relationship with Gentex or its helmets.  (Id. at ¶ A.)  The Consent

Decree states in pertinent part:

> Defendants will permanently refrain from publicly
> displaying or referencing the Subject Marks [i.e. the
> "Gentex" mark and the family of "SPH" marks] or
> any other name, trade name, trade mark and/or
> service mark similar thereto regarding any helmets
> repaired, refurbished, manufactured, distributed or
> sold by Defendants . . . or in any quotes, invoices,
> receipts, certificates, certifications, packaging,
> marketing, promotion, display, advertising, listings,
> websites, computer screens, computer programs,

13

computer applications, signage, offerings for sale,
sale, distribution and/or manufacturing relating
thereto.

(Id.)

25.     The Consent Decree bars HHC from marketing its helmets as
"Gentex" or "SPH" helmets and from offering to sell "Gentex" or "SPH" helmets
to bureaus within the DOI or any other customers.

26.     Notwithstanding the stipulated Consent Decree and the release
of all claims related to the Middle District Action, on May 1, 2017, HHC
commenced two new, factually identical actions against Gentex and its distributor,
Gibson & Barnes, alleging violations of federal and state antitrust laws, unfair and
deceptive trade practices, defamation, civil conspiracy and unjust enrichment based
on a DOI bureau's solicitation for an "SPH"-brand helmet and based on the same
DOI Accident Prevention Bulletin, "White Papers" and advertising material related
to the Middle District Action.

27.     In the action filed in the United States District Court for the
District of Delaware (referred to hereinafter as "the DE Action"), HHC purported
to assert claims against Gentex, Gibson & Barnes and Gibson & Barnes's
principal, James T. Wegge, for alleged violations of Sections 1 and 2 of the

Sherman Antitrust Act, the Federal Trade Commission Act, 15 U.S.C. § 45, the Delaware Unfair and Deceptive Trade Practices Act, 6 Del. C. § 2532, and Delaware state law. (A true and correct copy of the Complaint in the DE Action is attached hereto as Exhibit "K.") HHC referenced and attached to the Complaint as exhibits the same "White Papers," advertising material and DOI Accident Prevention Bulletin that were related to and involved in the Middle District Action. (See Compl. in DE Action ¶¶ 17-25 & Exs. B, C, E, F.)

28.     In the action filed in the Circuit Court of the Eighteenth Judicial District in Brevard County, Florida (referred to hereinafter as "the FL Action"), which was removed to the United States District Court for the Middle District of Florida on June 26, 2017, HHC purported to assert identical claims against Gentex and Gibson & Barnes under the Florida Antitrust Act, F.S.A. § 542.18 et seq., Florida's Unfair and Deceptive Trade Practices Law, F.S.A. § 501.201 et seq., and Florida state law. (A true and correct copy of the Complaint in the FL Action is attached hereto as Exhibit "L.") As in the DE Action, HHC referenced and attached to the Complaint in the FL Action the same "White Papers," advertising material and DOI Accident Prevention Bulletin that were related to and involved in the Middle District Action. (See Compl. in FL Action ¶¶ 13-21 & Exs. B, C, E, F.)

15

29.     HHC voluntarily dismissed the FL Action on July 31, 2017.

30.     The DE and FL Actions are a mere rehash of the same allegations that HHC advanced in the Middle District Action.

31.     HHC based its defense and counterclaims in the Middle District Action on the "White Papers," advertising material and DOI Accident Prevention Bulletin.

32.     The "White Papers," advertising material and DOI Accident Prevention Bulletin are thus "related to" the Middle District Action as that phrase is broadly and expansively interpreted and as that phrase is used in the Settlement and Release Agreement.

33.     The Settlement and Release Agreement serves as a complete bar to the claims asserted by HHC in the DE and FL Actions.

34.     Further, the purported harm alleged in the DE and FL Actions—HHC's inability to offer its helmets for sale to DOI agencies as "SPH" or "Gentex" helmets—is compelled by the Consent Decree (as well as federal and state trademark law) and therefore is not actionable as a violation of the Sherman Act or any other federal or state law.

# COUNT I

# BREACH OF CONTRACT

35.     Paragraphs 1 through 34 of this Complaint are incorporated by reference as if set forth fully herein.

36.     Pursuant to the Settlement and Release Agreement, HHC agreed to release "any and all claims . . . that [HHC] may now or hereafter have or acquire . . . against [Gentex] with respect to or in any way related to the Dispute or the Lawsuits . . . ." (See Settlement and Release Agreement ¶ 5(b).)

37.     The claims asserted in the DE Action and FL Action are based on the same "White Papers," advertising material and DOI Accident Prevention Bulletin that were involved in the Middle District Action and therefore are related to the Middle District Action and barred by the Settlement and Release Agreement.

38.     HHC breached its obligations under the Settlement and Release Agreement by filing the DE Action and the FL Action.

39.     Gentex was forced to incur legal fees and other costs to defend against the released claims and suffered other harm as a result of HHC's breach of the Settlement and Release Agreement.

WHEREFORE, Gentex demands the entry of judgment in its favor and against HHC, together with an award of compensatory damages and such other and further relief as the Court deems appropriate under the circumstances.

## COUNT II
## CLAIM FOR DECLARATORY RELIEF UNDER 28 U.S.C. § 2201(a)

40.     Paragraphs 1 through 39 of this Complaint are incorporated by reference as if set forth fully herein.

41.     Pursuant to 28 U.S.C. § 2201(a), Gentex seeks a declaratory judgment that HHC's pursuit of the DE Action and FL Action (prior to voluntary dismissal) violates the Settlement and Release Agreement.

42.     Given HHC's continued pursuit of the DE Action, there is an actual controversy between the parties concerning the restrictions in the Settlement and Release Agreement and therefore this matter is appropriate for declaratory judgment.

43.     The declaratory relief sought herein will clarify and settle the legal relations at issue and will resolve the controversies between the parties.

44.     Pursuant to the Settlement and Release Agreement, the state and federal courts of Pennsylvania have exclusive jurisdiction over any dispute arising from or related to the agreement, (see Settlement and Release Agreement ¶ 9), and therefore this dispute is properly addressed to and can only be resolved by this Court.

WHEREFORE, Gentex demands the entry of judgment in its favor and against HHC as follows:

(a)     Declaring that the claims asserted by HHC in the DE Action are barred by the Settlement and Release Agreement;

(b)     Enjoining HHC from litigating the DE Action; and

(c)     Awarding such other and further relief as the Court deems appropriate under the circumstances.

## COUNT III
## CLAIM FOR DECLARATORY RELIEF UNDER 28 U.S.C. § 2201(a)

45.     Paragraphs 1 through 44 of this Complaint are incorporated by reference as if set forth fully herein.

46.     The Consent Decree enjoins HHC from displaying, referencing and/or using the "Gentex" and "SPH" marks and thereby bars HHC from offering its helmets for sale to any customer as "Gentex" or "SPH" helmets.

47.     Pursuant to 28 U.S.C. § 2201(a), Gentex seeks a declaratory judgment that: (1) it is not a violation of the Sherman Act or any other federal or state antitrust law for Gentex to enforce through the Consent Decree its exclusive right to market, advertise and sell helmets bearing the "Gentex" and "SPH" marks; and (2) it was not a violation of the Sherman Act or any other federal or state antitrust law to (a) respond to the DOI bureau's solicitation for an "SPH"-brand helmet, (b) participate in the review and revision of any DOI publication, or (c) disseminate "White Papers" and/or advertising material to actual or prospective customers.

48.     HHC claims that it was forced to close one of its production facilities and lost sales as a result of its inability to fulfill requests for "SPH" helmets and is pursuing claims in the DE Action based on purported lost sales. Accordingly, there is an actual controversy between Gentex and HHC and this action is appropriate for declaratory judgment.

49.     The declaratory relief sought herein will clarify and settle the legal relations at issue and will resolve the controversies between the parties.

WHEREFORE, Gentex demands the entry of judgment in its favor and against HHC as follows:

(a)     Declaring that Gentex did not violate the Sherman Act or any federal or state antitrust laws by enforcing through the Consent Decree and otherwise its exclusive right to market, advertise and sell helmets bearing the "Gentex" and "SPH" marks;

(b)     Enjoining HHC from litigating the DE Action; and

(c)     Awarding such other and further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh
Attorneys for Plaintiff,
Gentex Corporation

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Date:  March 5, 2018

## CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy

Plaintiff's Amended Complaint was served upon the following counsel of record

via the Court's ECF system on this 5th day of March, 2018:

Joseph F. Orso, III, Esquire
Rudinski Orso and Lynch
339 Market Street
Williamsport, PA 17701

/s/ Donna A. Walsh
Donna A. Walsh