## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENTEX CORPORATION, | No. 4:17-CV-01136 |
| Plaintiff, | (Judge Brann) |
| v. | |
| HELICOPTER HELMET, LLC, | |
| Defendant. | |

## MEMORANDUM OPINION

### APRIL 13, 2021

## I.     BACKGROUND

In 2012, Gentex Corporation sued Helicopter Helmet, LLC for trademark infringement.  Three years later, the parties entered into a settlement agreement, putting an end to that case.  That settlement prohibited Helicopter Helmet from bringing lawsuits against Gentex that were in any way related to that trademark action.  Then in 2017, Helicopter Helmet sued Gentex in two different courts. Believing that these suits were barred by the terms of the agreement signed by both parties, Gentex brought this action for breach of contract, trying to recover legal fees it incurred defending the two 2017 suits.

Discovery has concluded and Gentex has filed a motion for summary judgment on its breach of contract claim.[1]  Because Gentex has established its

---

[1]   The Amended Complaint included two claims for declaratory judgment, but Gentex represents that those counts have been mooted by subsequent events.  Doc. 43 at 7-8.  Therefore, I do not address those counts any further.

entitlement to summary judgment, and there is no genuine dispute of material fact, the motion for summary judgment is granted.

## II.   DISCUSSION

### A.   Standard of Review

I begin my analysis with the standard of review which undergirds summary judgment. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[2] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[4] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[5] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[6]

---

[2]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[3]   Fed. R. Civ. P. 56(a).

[4]   *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).

[5]   *Clark*, 9 F.3d at 326.

[6]   *Id.*

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[7]  Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[8] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[9]  "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[10] The evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the

---

[7]   *Liberty Lobby, Inc*., 477 U.S. at 252.
[8]   *Id*.
[9]   *Id*.
[10]  *Id. (quoting Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).

absence of a genuine issue of material fact."[11]  "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[12]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[13]  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[14]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[15]  Moreover, "if a party fails to

---

[11]  *Celotex*, 477 U.S. at 323 (internal quotations omitted).

[12]  *Id*.

[13]  *Liberty Lobby*, 477 U.S. at 250.

[14]  Fed. R. Civ. P. 56(c)(1).

[15]  *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co*., 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[16]  On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[17]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[18]  "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[19]  "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[20]

### B.    Undisputed Facts

With that standard outlining the Court's framework for review, I now turn to the undisputed facts of this matter.

In 2012, Gentex filed suit against Helicopter Helmet in the Middle District of Pennsylvania for infringing on Gentex's trademarks (the "Trademark Lawsuit").[21]  One of the issues in the Trademark Lawsuit dealt with certain "white

---

[16]  Fed. R. Civ. P. 56(e)(2).
[17]  Fed. R. Civ. P. 56(c)(3).
[18]  *Liberty Lobby*, 477 U.S. at 249.
[19]  *Id*.
[20]  *Id*. at 249–50 (internal citations omitted).
[21]  Doc. 42 ¶ 1; Doc 47 ¶ 1.

papers" issued by Gentex's distributor regarding counterfeit helmets.[22]  These white papers discussed the use of obsolete and nonconforming components in commercial helicopter helmets.[23]  Additionally, Helicopter Helmet referred to the white papers in both depositions and discovery motions during the Trademark Lawsuit.[24]  Then, at some point during discovery in the Trademark Lawsuit, documents were exchanged in which Helicopter Helmet threatened to pursue claims against Gentex and its distributors for alleged antitrust violations.[25]

Another issue in the Trademark Lawsuit dealt with safety alerts and accident prevention bulletins issued by the United States Department of the Interior. Helicopter Helmet used these documents to defend against Gentex's claims and to pursue its counterclaims.[26]

---

[22]  Helicopter Helmets denies "that the pleadings in the [Trademark Lawsuit] in any way reference the 'white papers,'" but this claim is plainly contradicted by the pleadings themselves.  Doc. 47 ¶ 3.  In the operative complaint, Gentex alleged that a point of dispute between the parties in the Trademark Lawsuit "related to representations made about counterfeit helmets in 'White Papers' issued by Gentex's distributor."  Doc. 23 ¶ 10.  Helicopter Helmet's response to that allegation in its Answer: "Admitted."  Doc. 34 ¶ 10.  Helicopter Helmet does not create a genuine issue of material fact by merely alleging something contrary to what was admitted almost eighteen months ago.  This fact is properly deemed established.

[23]  *See* Doc. 42 Ex. B.

[24]  Doc. 42 ¶¶ 4-6; Doc. 47 ¶¶ 4-6.  Doc 42 Ex. C; Ex. D.

[25]  Doc. 42 ¶ 11; Doc. 47 ¶ 11.

[26]  Doc. 42 ¶¶ 7-8.  Once again, Helicopter Helmet displays unnecessary obstinance in responding to Gentex's statement of material facts.  Rather than simply admitting or denying these facts, as the rules require, Helicopter Helmet's response is that the "docket entries and filings in the previous action speak for themselves."  Doc. 47 ¶ 6.  Of course they do.  But so do the docket entries and filings in this action.  Gentex's Amended Complaint alleges that "[a]nother point of contention in the [Trademark Lawsuit] related to safety alerts and accident prevention bulletins issued by the U.S. Department of the Interior . . . " and that Helicopter Helmet "relied on the safety alerts and accident prevention bulletins in defense of Gentex's claims and in support of its counterclaims."  Doc. 23 ¶ 14.  Helicopter Helmet responded to that allegation in its Answer with the following: "Admitted."  Doc. 34 ¶ 14.

In June 2015, the parties entered into a settlement and release agreement (the "Settlement Agreement") wherein Helicopter Helmet released Gentex from "any and all claims, demands, actions, causes of action, rights of action, suits liabilities, expenses, and damages of every kind . . . in any way related to the Dispute."[27] This Court subsequently entered a consent decree (the "Consent Decree"), which enjoined Helicopter Helmet from infringing on Gentex's trademarks again.[28]  Then in 2017, Helicopter Helmet filed two lawsuits against Gentex for antitrust violations, unfair and deceptive trade practices, defamation, civil conspiracy, and unjust enrichment (the "Antitrust Lawsuits").[29]  Helicopter Helmet attached the white papers and the safety alerts/accident prevention bulletins to both of the complaints filed against Gentex and made multiple references to both sets of documents in the Antitrust Lawsuits' complaints, in support of their claims.[30]  The Antitrust Lawsuits were both resolved by July 2019.[31]  One lawsuit was voluntarily dismissed, and the other was dismissed by court order, and was affirmed on appeal by the Third Circuit.[32]  Gentex claims that it incurred $60,417.25 in legal fees defending against the Antitrust Lawsuits.[33]

---

[27]   Doc. 42 Ex. H.  The "Dispute" was defined as the Trademark Lawsuit and a related insurance coverage lawsuit.

[28]   Doc. 42 ¶ 13; Doc. 47 ¶ 13.

[29]   Doc. 42 ¶ 17; Doc. 47 ¶ 17.

[30]   Doc. 42 ¶ 19; Doc. 47 ¶ 19.

[31]   Doc. 42 ¶¶ 18, 20-21; Doc. 47 ¶¶ 18, 20-21.

[32]   *Id*.

[33]   Doc. 42 ¶ 22; Doc. 47 ¶ 22.

## C.     Analysis

Gentex's remaining claim alleges that Helicopter Helmet "breached its

obligations under the Settlement Agreement by filing" the Antitrust Lawsuits.[34]

Gentex seeks recovery for breach of contract.[35]   Under Pennsylvania law, "three

elements are necessary to plead a cause of action for breach of contract: (1) the

existence of a contract, including its essential terms; (2) a breach of the contract;

and (3) resultant damages."[36]

### 1.     The Settlement Agreement, and Not the Consent Decree, is the Relevant Contract

Helicopter Helmet does not dispute that the Settlement Agreement

constitutes a contract between the parties, nor could it plausibly do that.   But

Helicopter Helmet misunderstands the basis of Gentex's claim.   Helicopter Helmet

believes that both the Settlement Agreement *and* the Consent Decree are "the basis

of Plaintiff's lawsuit."   But a review of Count 1 of the Amended Complaint shows

that the Consent Decree plays no role in Gentex's conception of Helicopter

Helmet's breach of contract.[37]   Gentex's briefs on summary judgment confirm the

same.   The Consent Decree is not the relevant contract for purposes of assessing

the alleged breach.   Instead, Gentex frames its claim solely through the Settlement

---

[34]   Doc. 23 ¶ 38.
[35]   *Id*. ¶¶ 35-39.
[36]   *Doe v. University of Sciences*, 961 F.3d 203, 211 (3d Cir. 2020) (quoting *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 635 Pa. 427, 445 (2016)) (cleaned up).
[37]   Doc. 23 ¶¶ 35-39.

Agreement.[38]  Helicopter Helmet's repeated focus on the Consent Decree is misplaced.

Helicopter Helmet provides no facts or legal argument for why the Consent Decree should be read as superseding or limiting the Settlement Agreement entered into by the parties.  Helicopter Helmet's allegation that the Consent Decree "specifically limited the [Settlement Agreement] to the claims arising out of the events referred to in" the Trademark Lawsuit is wholly unsupported.[39]  In fact, the only reference to the Settlement Agreement in the Consent Decree is this: "The parties have entered into a Settlement Agreement and have stipulated and consented to the entry of this Consent Decree."[40]  That does not suggest in any sense that the documents have a close connection or impact one another, or that the Consent Decree limits the Settlement Agreement at all.  Helicopter Helmet does not identify another piece of the Consent Decree that suggests something to the contrary.

This is further reinforced by the fact that Settlement Agreement and Consent Decree served very different purposes.  The Settlement Agreement includes a section entitled "Releases."  There, Helicopter Helmet agreed to release Gentex from "any and all claims, demands, actions, causes of action . . . of every kind, nature, and description whatsoever that [Helicopter Helmet] may now or hereafter

---

[38]   *Id.*
[39]   Doc. 47 ¶ 12.
[40]   *Id.* at 3.

have or acquire . . . whether known or unknown, and whether accrued or to accrue, against [Gentex] with respect to or in any way related to the Dispute or the Lawsuits."[41]  This is an obvious release provision, purporting to outline exactly the rights that Helicopter Helmet would waive.  But Helicopter Helmet wants to focus on language in the Consent Decree where the Court and parties acknowledged that the "parties deny liability and wrongful conduct" but "desire[d] to settle any and all claims, controversies, demands, actions, or causes of action they had, have, or may have against each other arising out of the events referred to in the Second Amended Complaint and/or Defendants' Answer, Affirmative Defenses and Counterclaims."[42]  This language does not create any enforceable promise between the parties.  Helicopter Helmet cannot create a contract out of those words.

Additionally, the Consent Decree and Settlement Agreement provide separate recourses and penalties in the event of a violation of their distinct terms. For example, the Consent Decree provides that a violation thereof would constitute contempt of court and subject the violator to a judgment in favor of the other party, an order compelling the violator to reimburse the other party for reasonable costs and fees incurred in bringing the contempt motion, as well as other relief deemed appropriate by the Court.[43]   On the other hand, the Settlement Agreement constituted a contract between the parties, and it is axiomatic that the proper

---

[41]   Doc. 42 Ex. H at 2.
[42]   Doc. 42 Ex. I at 3.
[43]   *Id.* at 6.

recourse for a violation of a contractual agreement that causes damages is a claim for breach of contract.  Helicopter Helmet attempts to build a connection between two documents that have little to say about one another, and this effort fails.

And again, the texts themselves show how far afield Helicopter Helmet's interpretation is.  The Settlement Agreement uses the operative verbs "release, acquit, and []discharge," to signify exactly what Helicopter Helmet agreed to do.[44] On the other hand, the Consent Decree simply acknowledges that the parties wished to "settle" certain claims.[45]  To the extent the Court should even consider the Consent Decree, it is clear that this document does not create any *obligation* for either party with regard to *future* lawsuits.

In short, the Court evaluates Gentex's breach of contract claim based on the Settlement Agreement, because that is the contract which governs, and the contract upon which Gentex based its complaint.  Helicopter Helmet's cursory arguments otherwise provide no reason to find that the Consent Decree is a relevant contract in this case.

### 2.    Helicopter Helmet Breached the Settlement Agreement

Helicopter Helmet's argument on breach is also based on the incorrect view that the Consent Decree is the relevant contract.[46]  Helicopter Helmet's defense is

---

[44]   Doc. 42 Ex. H at 2.
[45]   Doc. 42 Ex. I at 3.
[46]   Doc. 49 at 4 ("The Consent Decree agreed to by Gentex conclusively establishes that the Helicopter Helmet, LLC's actions filed in Delaware and Florida were completely unrelated to the [Trademark Lawsuit.").

quite narrow: it claims that "the documents related to the 2012 trademark infringement case have no bearing on a 2017 antitrust case."[47]  Helicopter Helmet further asserts that because the Antitrust Lawsuits included different causes of action and parties from the Trademark Lawsuit, it would be "difficult to fathom" how the Antitrust Lawsuits "arise" out of the Trademark Lawsuit.[48]

First, Helicopter Helmet never explains why the inclusion of different parties in the Antitrust Lawsuits means that they cannot be related to the Trademark Lawsuit.  This cursory allegation is insufficient to create a genuine dispute of material fact.

Likewise, Helicopter Helmet's difficulty in perceiving some relation between the lawsuits does not preclude summary judgment.  And again, the Settlement Agreement's release provision never uses the term "arise" (or any variant thereof) to limit the scope of the released claims; that language is only found in the Consent Decree.  Instead, in the Settlement Agreement, Helicopter Helmet released any and all claims against Gentex, known or unknown at the time of execution, that were "in any way related to" the Trademark Lawsuit.[49]  That is the relevant language, and it is much broader than Helicopter Helmet seems to acknowledge.

---

[47]  *Id*. at 1.
[48]  *Id*. at 4-5.
[49]  Doc. 42 Ex. H at 2.

Courts evaluating the phrase "related to" have determined that it casts a wide net.  For example, in this Court's ruling on the second motion to dismiss this action, I noted a decision from the United States Supreme Court which recognized that the term "in relation to" was "expansive" in both statutory and contractual settings.[50]  As such, I noted that because Gentex alleged that Helicopter Helmet threatened to bring the antitrust violations "as either additional counterclaims in the [Trademark Lawsuit] or in a separate action," that the claims might be related.[51]  In the same vein, the Superior Court of Pennsylvania, in *Front Street Dev. Assocs., L.P. v. Conestoga Bank*, acknowledged that a release contained "language clearly indicating an intent to bar claims even remotely arising out of or connected to" certain documents at issue.[52]  Here, I find that the phrase "in any way related to" operates similarly and requires the Court to construe the Settlement Agreement's release broadly.

Gentex has established that the Antitrust Lawsuits are in *some* way related to the Trademark Lawsuit.  The record is clear that the white papers described above were used by Helicopter Helmet in depositions and relied upon in discovery motions during the Trademark Lawsuit.  The safety alerts/accident prevention bulletins were also relevant to the parties' arguments.  Discovery in the Trademark Lawsuit revealed communications from Helicopter Helmet where it accused

---

[50]   *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 148 (2009).
[51]   *See* Doc. 33.
[52]   *Front Street Dev. Assocs., L.P. v. Conestoga Bank*, 161 A.3d 302, 311 (Pa. Super. 2017).

Gentex of antitrust violations and threatened to pursue antitrust claims against Gentex and its distributors.  Then, when Helicopter Helmet actually filed the Antitrust Lawsuits, it referenced and attached those same white papers and safety alerts/accident prevention bulletins.  They clearly played at least a supporting role throughout the Trademark Lawsuit and the Antitrust Lawsuits and thus created a factual relationship between the claims.

Gentex has met its burden to show that the Antitrust Lawsuits and the Trademark Lawsuit are in some way related to one another based on the factual underpinnings of both litigations.  The Antitrust Lawsuits involved a number of the same documents, and it appears that antitrust claims were considered and that Helicopter Helmet threatened to raise such causes of action during the Trademark Lawsuit.  That is enough to find that the Antitrust Lawsuits and the Trademark Lawsuit are in *some* way related, all that is required under the broad terms of the Settlement Agreement.

Helicopter Helmet submits no evidence showing why there might be a genuine issue of material fact on this question.  It also provides no case law contradicting Gentex's interpretation or suggesting that a narrower view would be appropriate.  Its response is effectively an argument that because the claims were different (antitrust and trademark), that the two claims cannot possibly be related, even remotely.  But Helicopter Helmet does nothing to explain away the facts established by Gentex – other than offer conclusory allegations – and so cannot

withstand summary judgment on this issue.  Even if the Trademark Lawsuit and the Antitrust Lawsuits were only tenuously related, that would be enough.  Gentex has sufficiently established a breach of the Settlement Agreement.

### 3.    Gentex Has Established Recoverable Damages

Having established the existence of a contract and a breach thereof, the Court considers Gentex's argument on damages.  The question before the Court is whether the costs Gentex incurred in the Antitrust Lawsuits are properly characterized as consequential damages or simply as attorney's fees in this breach of contract litigation.  If they are consequential damages, Gentex is allowed recovery.  If they are more accurately deemed attorney's fees in this action, Gentex must bear its own costs.

Helicopter Helmet claims that Gentex's measure of damages is not recoverable.  Pointing to a general proposition that a party may not seek attorney's fees in a breach of contract action, Helicopter Helmet asserts that Gentex is not entitled to compensation for Helicopter Helmet's breach of the Settlement Agreement.  This argument, while perhaps plausible on its face, fails upon closer inspection.

To be sure, the general rule in Pennsylvania is that parties bear their own costs in breach of contract suits, colloquially known as the American Rule.  For example, in *Haverstick v. The Erie Gas Co.*, decided more than one hundred and fifty years ago, the Pennsylvania Supreme Court held that the plaintiff could not

"recover damages for having to employ counsel" to bring a suit.[53]  One hundred

years later, that same court reiterated the principle that, in the breach of contract

context, compensation has "never been recoverable for trouble and expenses in

conducting a suit and establishing a right."[54]  Normally, attorney's fees cannot be

recovered in contract disputes without some statutory or contractual provision

specifically granting a right to such recovery.[55]

That general rule, however, is inapplicable in this situation.  Gentex does not

seek to recover the cost it incurred in conducting *this* lawsuit and establishing the

instant breach of contract.  Instead, Gentex asserts that the cost it incurred in

defending against the Antitrust Lawsuits constitutes the measure of its damages

stemming from Helicopter Helmet's breach of contract.  In other words, Gentex

does not ask this Court to reimburse it for the expenses in this litigation.  Rather,

Gentex wants the money it would take to place Gentex "as nearly as possible in the

same position it would have occupied had there been no breach."[56]

Helicopter Helmet's point, however, requires more analysis.  Neither party

provides much legal support for its argument.  Few cases seem to have addressed

the question of how to characterize costs when a plaintiff seeks to recover damages

---

[53]  *Haverstick v. The Erie Gas Co.*, 29 Pa. 254 (1865).
[54]  *Corace v. Balint*, 418 Pa. 262, 271 (1965).
[55]  *Id*.
[56]  *Helpin v. Trustees of Univ. of Pa.*, 608 Pa. 45, 50 (2010).

from another lawsuit, and most of the cases that do are procedurally distinguishable.[57]

The cases this Court has reviewed show that a plaintiff cannot recover attorney's fees from an underlying litigation where it was also the plaintiff in that lawsuit.  For example, in *Caldwell v. Keystone Ins. Co.*, the plaintiff filed a lawsuit to recover the "attorney's fee incurred in collecting the verdict" in a previous litigation.[58]  The plaintiff in *Caldwell* had also been the plaintiff in the case from which he sought to recovery fees.  That effort was rejected.  Likewise, *Lewis v. Delp Family Powder Coatings, Inc.* dealt with a plaintiff who sought to recover attorney's fees he incurred in prosecuting another lawsuit.  There, that court found that Lewis's request was simply an "attempt to circumvent the American Rule."[59]  And indeed, it was.  Lewis had also been the plaintiff in another lawsuit and was looking to recoup the cost of establishing his rights in that litigation.  This is clearly not permitted by Pennsylvania's contract doctrines.  Other similar cases hold likewise.

The only case that Helicopter Helmet cites for this argument is distinguishable for the same reason.[60]  On the surface, this case seems closer to the instant action, but it is actually more similar to the other cases discussed above.

---

[57]  *See, e.g., Caldwell v. Keystone Ins. Co.*, 212 Pa. Super. 379 (1968); *Lewis v. Delp Family Powder Coatings, Inc., et al.*, 2011 WL 1230207 (W.D. Pa. Mar. 31, 2011).

[58]  *Caldwell*, 212 Pa. Super. at 381.

[59]  *Lewis*, 2011 WL 1230207 at *6.

[60]  *See Guadagnini v. LaGioia*, 1996 WL 431830 (E.D. Pa. July 31, 1996).

The plaintiffs in *Guadagnini v. LaGioia* had previously been sued for property damage.  So on the docket in that action, the Guadagninis would have been listed as the defendants.  At this point, their situation mirrors the one before this Court now.  But in that underlying litigation, the Guadagninis filed a counterclaim and a crossclaim "to recover from a third-party damages" for harm caused to their property.[61]  With regards to the claim for which they actually sought to recover attorney's fees in *LaGioia*, they were effectively sitting as the plaintiffs.  Therefore, that case is no more helpful in assessing the proper outcome in this matter than the other cases discussed above.  The court in *LaGioia* correctly rejected the Guadagninis' request for the attorney's fees they incurred in establishing their own claim.

These outcomes were to be expected.  All of those plaintiffs were seeking to perform an end-run around the American Rule; had they requested attorney's fees in the underlying litigations, they would have certainly been denied, so they filed another lawsuit and tried that avenue.  Those efforts were properly rejected.

But each the cases above is distinguishable from the matter at hand.  First, Gentex does not seek damages for having to bring the instant suit.  And more importantly, Gentex did not bring the suits during which it incurred the damages at issue.[62]  Put differently, Gentex does not seek to recover the costs of prosecuting its

---

[61]  *Id*. at *3.
[62]  A review of the cases that have subsequently cited to *Haverstick*, *Caldwell*, and *Lewis* for those propositions confirms the odd posture of this litigation.

own rights (the scenario in each of the cases above); rather, Gentex was hailed into court in multiple forums, and was forced to defend itself.  Gentex had few options but to litigate the allegations and necessarily incurred costs for doing so (Gentex could also have defaulted, an undesirable outcome for the company, of course, and one that would have come with its own costs).  The fact that Gentex won dismissal of those lawsuits does not negate the fact that it had to spend money to avoid liability.[63]  It just so happens that Gentex's measure of damages equals its attorney's fees from the Antitrust Lawsuits.

The Court considered a hypothetical question in reaching this conclusion: if Gentex had been found liable in the Antitrust Lawsuits and been forced to pay damages to Helicopter Helmet, would Gentex be able to recover those damages in this litigation?  The answer to that question may well be yes.  Even if Gentex had been found liable for antitrust violations, the very act of initiating those lawsuits would put Helicopter Helmet in breach of the Settlement Agreement, and it appears that any civil award would constitute Gentex's damages.  That would similarly establish Gentex's claim for breach of contract and entitle Gentex to the damages therefrom.

---

[63]   Though neither party discussed them, the Court acknowledges that there is at least one case from the Court of Common Pleas of Philadelphia County, and another from the Eastern District of Pennsylvania that approximately mirror the posture of this litigation.  *See Axcan Scandipharm, Inc. v. American Home Products*, 2003 WL 21731124 (Pa. D. & C. July 22, 2003); *Precision Door Co., Inc. v. Meridian Mut. Ins. Co.*, 353 F.Supp.2d 543 (E.D. Pa. 2005).  But even the decision in *Axcan* was forced to rely on precedent from the Colorado state court system in order to reach its conclusion.  Because that decision is not binding on me, and I find that another result is more appropriate, I decline to follow the path those cases chartered.

The fact that Gentex's counsel was able to minimize the cost to their client by winning dismissal and avoiding liability should not erase the very real expenses of litigation that were incurred.  To hold otherwise would create an inequitable outcome, where one party could breach the release clause in a settlement, file wholly meritless lawsuits which would eventually be exposed as such, and the non-breaching party could be left without some recourse or method to recover the costs it suffered.[64]

The rule in Pennsylvania has long been that compensation is not "recoverable for trouble and expenses in conducting a suit and establishing a right."[65]  This decision is consistent with that rule; I repeat that the Court is not compensating Gentex for the expenses it incurred in conducting this lawsuit and establishing its breach of contract claim.  Instead, the Court is making Gentex whole for the cost of being forced to litigate claims that Helicopter Helmet brought in breach of the Settlement Agreement.[66]  In this setting, it seems to make little difference whether the damages stem from litigation costs or a civil fine.  Either way, they would constitute compensable damages.  The fact that the damage to Gentex came from costs it incurred in litigation appears to be a red herring.

---

[64]   To be clear, the Court is not commenting on the merits of the Antitrust Lawsuits.  It is simply explaining the possible results of such a ruling in future cases.

[65]   *Corace v. Balint*, 418 Pa. 262, 271 (1965).

[66]   *See, e.g.*, *Makenta v. University of Pennsylvania*, 2002 WL 47836 (E.D. Pa. Jan. 11, 2002) (noting that the defendant's counterclaim for breach of contract would allow it "to recover damages from [the plaintiff] stemming from [the plaintiff's] alleged breach of the settlement agreement and release").

Having accepted Gentex's argument that its costs from the Antitrust Lawsuits are recoverable, I consider the evidence supporting the quantity of damages.  Gentex has submitted a Declaration from Heather M. Acker, the Chief Financial Officer at Gentex.[67]  Her Declaration asserts that Gentex paid $60,417.25 in legal fees to counsel "in connection with defending Gentex against" the Antitrust Lawsuits.  I find that this is sufficient to establish the amount in damages incurred by Gentex.

Helicopter Helmet claims that pursuant to 26 U.S.C. § 7430, attorney's fees must be reasonable, and the services must have been necessary.  That statute, however, does not apply to this litigation.  Instead, it concerns administrative or court proceedings "brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty" under Title 26 of the United States Code.[68]  This provision entitles the prevailing party to "reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service" and "reasonable litigation costs incurred in connection with such court proceeding."[69]  This case is not brought by or against the United States, and it is not brought in relation to any tax, interest, or penalty under the Internal Revenue Code (Title 26).  Therefore, Helicopter Helmet's argument, based on an inapplicable statute, fails.

---

[67]   Doc. 42 Ex. N.
[68]   26 U.S.C. § 7430(a).
[69]   26 U.S.C. § 7430(a)(1); 26 U.S.C. § 7430 (a)(2).

Helicopter Helmet does not contest that Gentex actually incurred $60,417.25 in legal fees, or that these costs otherwise constitute consequential damages. Therefore, Gentex has established its damages and is entitled to summary judgment in that amount.

## III.   CONCLUSION

Gentex has established its right to summary judgement on the breach of contract claim.  Helicopter Helmet has failed to show that Gentex is not entitled to summary judgment based on the law and has failed to illustrate a genuine issue of material fact that would require a jury determination.  Therefore, I grant summary judgment as to Count 1 of the Amended Complaint.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge